UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| ANNIE BACKMAN, | ) | Civil Action No.: 4:12-cv-1897-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **ORDER** |
| | ) | |
| CAROLYN W, COLVIN[1], | ) | |
| Acting Commissioner of Social Security; | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

    This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied.

## PROCEDURAL HISTORY

    Plaintiff filed an application for DIB on November 3, 2009, alleging a disability onset date of December 31, 2007, which she later amended to January 28, 2008. Her application was denied at all administrative levels, upon reconsideration and, after a August 9, 2011, administrative hearing, by an Administrative Law Judge (ALJ) on August 31, 2011. The Appeals Council denied Plaintiff's request for review on May 4, 2012.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**PLAINTIFF'S ARGUMENTS**

I.    The ALJ failed to properly consider Plaintiff's chronic pain syndrome in accordance with Social Security Ruling 03-2p;

II.   The ALJ erred by not considering the impact of Plaintiff's obesity in accordance with SSR 02-1p;

III.  The ALJ improperly assessed Plaintiff's claim at step three of the sequential evaluation process; and

IV.   The ALJ failed to carry the Commissioner's burden at step five of the sequential evaluation process.

Pl. Brief 1.

**FACTUAL BACKGROUND**

Plaintiff was born in 1960. She has at least a high school education and past relevant work as a caregiver and a housekeeper.

**DISABILITY ANALYSIS**

In the decision of August 31, 2011, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant will meet the insured status requirements of the Social Security Act through December 31, 2013.

2.    The claimant has not engaged in substantial gainful activity since January 8, 2008[2], the amended alleged onset date (20 CFR 404.1571 et seq.).

3.    The claimant has the following severe impairments: residuals from cerebrovascular accident; osteoarthritis of the right knee; cerebrovascular residual pain syndrome; and possible plantar fasciitis (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

---

[2]This appears to be a typographical error and should read January 28, 2008.

-2-

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to sit for 6 hours in an 8-hour day with normal breaks and stand 4 hours in an 8-hour day for approximately 1 hour at a time. She can walk short distances (up to 50 feet) without an assistive device 4 hours in an 8-hour day. She can lift 20 pounds occasionally and 10 pounds frequently and push/pull within the pound limitations given. The claimant must avoid climbing ropes, ladders, and scaffolds but can perform other postural activities occasionally (up to 1/3 of the work day. Furthermore, she can occasionally reach with her left upper extremity but has no limitation on the use of the right upper extremity (dominant extremity). She should avoid unprotected heights and dangerous moving machinery. Additionally, she should avoid jobs requiring rapid or clear speech and should avoid ongoing contact with the general public. By reason of her speech deficit, she can give brief answers. Any changes should be infrequent and gradual and she should avoid jobs with a strict production standard or requiring precise measurements or tolerances in order to avoid excess stress.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 2, 1960 as was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changes age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569 (a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 28, 2008, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 12-20).

Under the Social Security Act (the Act), 42 U.S.C. § 405 (g), this court's scope of review of

the Commissioner's final decision is limited to determining: (1) whether the decision of the Commissioner is supported by substantial evidence, and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a. An ALJ must consider: (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work, and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5), pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and if proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423 (d)(5). He must make a prima facie showing of disability by showing he was unable to return to his past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the national economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## ARGUMENTS/ANALYSIS

**Application of SSR 03-2p**

Plaintiff first argues that the ALJ failed to "carefully evaluate the diagnosis of CRPS" in violation of SSR 03-2p. SSR 03-2p provides guidance for evaluating claims of disability based on Reflex Sympathetic Dystrophy Syndrome (RSDS or RSD), also known as Complex Regional Pain

Syndrome (CRPS). See SSR 03-2p, 2003 WL 22399117. To establish RSDS/CRPS as a medically determinable impairment, there must be appropriate signs, symptoms, and laboratory findings. Id. at *3-4. These include swelling; autonomic instability, seen as changes in skin color or texture, sweating, skin temperature, or gooseflesh; abnormal hair or nail growth; osteoporosis; or involuntary movements of the affected region of the initial injury. Id. at *4.

Plaintiff has not been diagnosed with RSDS/CRPS. Plaintiff underwent a consultative examination with Dr. James Bumgartner, a specialist in neurological disorders, who specifically found "no trophic or vasomotor changes to suggest RSD." (Tr. 282). This is the only reference to RSDS/CRPS made by any of the neurologists of record. Dr. Bumgartner found Plaintiff's symptoms were consistent with post-stroke pain syndrome. (Tr. 283). This diagnosis is consistent with the diagnoses of the other neurologists in the record. (Tr. 273, 276, 308, 353 (diagnoses of Drs. Stout and Maguire, of status post right thalamic stroke with associated thalamic pain syndrome, left-sided hemiparesthesias, and cerebrovascular accident with residual pain syndrome)). Coupled with the lack of diagnosis is also a lack of specific medical findings that would point to RSDS/CRPS. While Plaintiff points to evidence in the record that she argues would establish RSDS/CRPS, this evidence largely comes from medical reports documenting her subjective statements rather than a physician's findings. (See, e.g., Tr. 278 ("The patient tells me that since discharge she continues to complain of some . . . twitching and burning affecting her face."); Tr. 276 ("She tells me she was really doing okay, except for some warmth abnormal sensation . . . ."); Tr. 256, 273, 281). Pursuant to SSR 03-2p, RSDS/CRPS constitutes a medically determinable impairment only when it is clinically documented by appropriate medical signs, and not just by an individual's statement of symptoms. 2003 WL 22399117, at *3-4; see also 20 C.F.R. § 404.1508 (noting that impairments "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by

your statement of symptoms"). Furthermore, Plaintiff never alleged she had RSDS/CRPS at any time during the administrative process or at the hearing. Thus, Plaintiff fails to show that the ALJ violated SSR 03-2p.

In her brief, at the end of the section discussing SSR 03-2p, Plaintiff adds that the ALJ also erred by violating SSR 96-8p by failing to reconcile Dr. William Maguire's opinion with the conflicting RFC and by violating 20 CFR § 404.1527(c) by failing to properly evaluate the medical opinions of Drs. Stout, Bumgartner and Honney. With respect to Dr. Maguire's opinion, the ALJ assigned it "little weight." (Tr. 18). Dr. Maguire performed a consultative physical examination on September 03, 2010. (Tr. 350-353). He reported that Plaintiff described an intense burning sensation in her left upper and lower extremities since her stroke in 2008 that worsened with immersion into cold water and all activity. (Tr. 350). Dr. Maguire also noted that Plaintiff reported that she generally felt cold at all times. (Tr. 350). On exam, Dr. Maguire noted that the main problem with Plaintiff's gross manipulation with the left hand was pain. (Tr. 352). He found that Plaintiff had normal strength in all four extremities, normal grip strength and range of motion in her left hand, normal sensory function in her face, arms and legs, and a normal right hand extension. (Tr. 351-52). He assessed cerebro-vascular accident with residual pain syndrome with associated limitations in activities due to pain in her left arm and hand and left leg and foot. He noted that this would make employment difficult for her because she was only able to do a small amount of daily activities without causing a great deal of pain. (Tr. 352).

The functional limitations opined by Dr. Maguire are not well-supported by his own examination findings. In assigning little weight to Dr. Maguire's opinion that Plaintiff's pain in her left hand and left leg and foot would make employment difficult, the ALJ noted that physical examinations have revealed only minimal problems with the left extremities and, in December of

2009, Plaintiff was independent with activities of daily living. (Tr. 18, 311). Further, the ALJ recognized that in March of 2010, upon examination, Plaintiff's motor strength, sensation and coordination were normal in all four extremities. (Tr. 17, 308). The ALJ also noted that she considered these conditions when forming Plaintiff's RFC. (Tr. 18). Specifically, the ALJ provided in the RFC that Plaintiff could only occasionally reach with her left upper extremity but had no limitation on the use of her dominate, right upper extremity. Thus, Plaintiff fails to show that the ALJ violated SSR 96-8p because the ALJ identified Plaintiff's functional limitations and provided a narrative "describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96–8P, 61 Fed.Reg. 34474, 34475, 34478 (July 2, 1996). While there may be conflicting evidence in the record, substantial evidence supports the findings made by the ALJ.

Plaintiff does not specifically identify how the ALJ erred in weighing the medical opinions of Drs. Stout, Bumgartner and Honney. 20 CFR § 404.1527 sets for the guidelines for weighing medical opinions. In July of 2008, Dr. Stout opined that Plaintiff could have returned to work in her normal job with normal duties. (Tr. 277). He asserted no additional opinions with respect to Plaintiff's functional limitations during Plaintiff's subsequent visits. (Tr. 271-73, 308-09). This opinion is not contrary to the ALJ's findings. Dr. Honney and Dr. Bumgartner rendered opinions regarding Plaintiff's diagnoses. However, other than what is stated above regarding Dr. Stout, these physicians did not render opinions specifically addressing Plaintiff's functional limitations or capabilities. Thus, Plaintiff's argument that the ALJ violated 20 CFR § 404.1527(c) is without merit.

**Plaintiff's Obesity**

Plaintiff next argues that the ALJ erred by not considering the impact of her obesity in

-8-

accordance with SSR 02-1p.  SSR 02–1p provides that the presence of obesity does not determine disability, but rather, the effect obesity has on a claimant's ability to function and perform work-related tasks determines whether the claimant is disabled. SSR 02–1p, 67 Fed.Reg. 57859–02 (Sept. 12, 2002).  The record reveals that Plaintiff is 5'2 and weighed between 231-245 pounds. (Tr. 259, 261, 263, 283, 352).  Further, Dr. Bumgartner diagnosed Plaintiff with morbid obesity in December of 2009.  (Tr. 312).  However, the medical records do not reveal any conclusion or opinion that Plaintiff's obesity resulted in any functional limitations.  In fact, Drs. Saito and Brown specifically noted that Plaintiff's obesity did not further reduce her residual functional capacity and the ALJ based her RFC finding largely on the opinions of these doctors.  (Tr. 299, 305, 338, 344, 18). Therefore, Plaintiff's argument that the ALJ erred in failing to considered Plaintiff's obesity is without merit. See Smith v. Astrue, No. 8:10-cv-2624, 2012 WL 786944 (D.S.C. Jan. 18, 2012) (unpublished) (citing Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004) (holding that ALJ's failure to discuss obesity was not error where plaintiff could not point to any additional functional limitations in the record); Prochaska v. Barnhart, 454 F.3d 731 (7th Cir. 2006) (holding that a lack of obesity analysis in a residual functional capacity assessment harmless where the ALJ relies on doctors' reports that make reference to plaintiff's weight).

**Listing of Impairments**

Plaintiff argues that the ALJ erred by concluding that Plaintiff did not meet the criteria required for Listing 11.04 (central nervous system vascular accident)[3] or Listing 1.02 (joint dysfunction).[4]  "For a claimant to show that his impairment matches a listing, it must meet all of the

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1 § 11.04

[4] 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.02

specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). The claimant must have the findings shown in the listing of that impairment. 20 C.F.R. § 404.1525(d); see Bowen v. Yuckert, 482 U.S. 137, 146 and n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition). The Commissioner compares the symptoms, signs, and laboratory findings of the claimant's condition, as shown in the medical evidence, with the medical criteria for the listed impairment. Medical equivalence can be found if the condition is at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 404.1526(a). A claimant must prove that she met each of the listing's criteria for at least 12 continuous months. 20 C.F.R. § 404.1525(c)(4).

The ALJ considered whether Plaintiff met Listing 11.04A and 11.04B. (Tr. 14). To meet Listing 11.04A, Plaintiff was required to introduce evidence of "[s]ensory or motor aphasia [(the absence or impairment of the ability to communicate)] resulting in ineffective speech or communication." See Listing 11.04A. The record reveals that Plaintiff had some difficulty speaking on January 31, 2008, three days after she was admitted to the hospital for treatment of her stroke. (Tr. 204-05). In February 2008, she reported that her "speech had improved." (Tr. 258). Thereafter, Plaintiff discussed her speech with doctors twice. In December of 2009, she provided that her stuttering had "been less frequent in recent months" (Tr. 281), and in September of 2010 she reported a "slight speech problem and that she "tends to stutter" when anxious. (Tr. 350). Dr. Bumgartner found that Plaintiff's speech was normal in articulation and fluency "with occasional slight stutter" (Tr. 282) and Dr. Maguire stated that Plaintiff's "speech actually seem[s] fine." (Tr. 353). Substantial evidence exists to support the ALJ's finding that Plaintiff did not meet Listing 11.04A.

Listing 11.04B requires evidence of "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." See Listing 11.04B. "Significant and persistent disorganization of motor function" is defined as: partial or complete paralysis, tremor or other involuntary movements, defective muscular coordination, and sensory disturbances which affect gross and dexterous movements or gait and station. Id. The assessment of whether the listing requirement is met for any of those conditions "depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms." 20 C.F.R. pt. 404, subpt. P, app. 1 § 11.00C.

The objective medical findings in the record show normal sensation throughout, very mild peripheral sensory polyneuropathy, stable ambulation, normal strength, tone and fine motor movements, no tremors or involuntary movements, posturing of the left hand consistent with thalamic posturing status post stroke, normal motor strength in arms and legs, normal coordination, normal grip strength and range of motion in left hand, normal right hand exam, can tandem walk but cannot heel-to-toe walk or squat.  (Tr. 276, 272, 282, 308, 352).

Although Plaintiff points to evidence to support a finding that she meets the criteria for Listing 11.04B, much of the evidence she identifies are doctors' notations of her subjective reports. For instance, Dr. Maguire provides "she is able apparently to walk some without the cane," and, "she states that she has to use a cane when she starts wearing out and in fact, she has to use the cane most of the time."  (Tr. 352); (see also Tr. 278-79; 271-74; 281-84).  Plaintiff's self reported statements are insufficient to meet or equal listing criteria. See SSR 96-5p, 1996 WL 374183, at *3 (requiring objective signs and laboratory findings to meet listings criteria); 20 C.F.R. § 404.1529(d)(3) ("we will not substitute your allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed impairment").

Nevertheless, even if there is conflicting evidence in the record, substantial evidence exists to support the ALJ's finding and Plaintiff's argument is without merit.

The ALJ also considered whether Plaintiff's right knee osteoarthritis met or equaled Listing 1.02. To meet Listing 1.02, Plaintiff must present evidence to establish that she had a major dysfunction of a joint resulting in an inability to ambulate effectively as defined by 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00B2b. See Listing 1.02. Section 1.00B2b defines "inability to ambulate effectively" as "generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities"—i.e., both arms. 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00B2b(1). In addition, as stated above, Plaintiff must prove that she met each of the listing's criteria for at least 12 continuous months. 20 C.F.R. § 404.1525(c)(4).

Plaintiff initially complained of knee pain in August 2010 (Tr. 345), and last complained of any knee pain in October 2010. (Tr. 358). The next medical record, from August 2011, makes no mention of knee pain or any other knee-related symptoms. (Tr. 359). Furthermore, although there is evidence in the record that Plaintiff used a cane during this period of time, it is not an assistive device that requires both hands or arms to use. Accordingly, substantial evidence exists to support the ALJ's conclusion here as well.

**Step-Five Evaluation**

Plaintiff raises more than one argument regarding the ALJ's evaluation at step-five of the sequential evaluation process. First Plaintiff argues that the ALJ failed to include in the RFC the exertional capacity to which Plaintiff was limited. However, the ALJ specifically states in her decision, albeit not in the RFC, "[i]f the claimant had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed by the Medical-Vocational

Rule 202.21 and Rule 202.14. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." (Tr. 19). This finding is in accordance with SSR 96-8p, which requires only that an ALJ express a claimant's residual functional capacity in terms of an exertional category at step five of the sequential evaluation process. See SSR 96-8p, 1996 WL 374184, at *3 ("At step 5 of the sequential evaluation process, RFC must be expressed in terms of, or related to, the exertional categories when the adjudicator determines whether there is other work the individual can do."). Thus, the ALJ was under no duty to set forth an exertional limitation within the RFC.

Plaintiff next argues the ALJ failed to elicit from the Vocational Expert (VE) an explanation for the inconsistencies between her testimony and the hypothetical. Social Security Ruling 00–4p states "[w]hen a VE [vocational expert] or VS [vocational specialist] provides evidence about the requirements of a job or occupation," the adjudicator has "an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and the information provided in the DOT."

At the hearing, the ALJ posed the following hypothetical question to the VE:

> Assume an individual 51 years of age. She completed high school. She can read, write, add, and subtract. She is right-hand dominant. I want you to assume that she can sit six hours in an eight-hour day with normal breaks. She can stand four hours in a normal day, approximately one at a time. She can walk short distances, which I will define up to 50 feet, without an assistive device, four hours in an eight-hour day. I want you to assume that she can lift 20 pounds occasionally and 10 pounds frequently. She can push and pull within the pound limits I have given you. I want you to assume that she must avoid climbing ropes, ladders, and scaffolds; otherwise, she can perform postural activities occasionally. And again, occasional is up to one-third of the workday; frequent is up to two-thirds of the workday. She can occasionally reach with her left upper extremity. She should avoid unprotected heights and dangerous moving machinery. She should avoid jobs requiring rapid or clear speech. And should avoid ongoing contact with the general public. By reason of her speech deficit, she can give brief answers. Any changes should be infrequent and gradual. And she should avoid jobs with a strict production standard or requiring precise measurements or tolerances. And when I tell you that, its simply to avoid stress. Not that she can't perform well, it's just that she should avoid the stress

>  required by precision. And I'm thinking more in terms of technical situations such
>  as inspecting with a micrometer. Can you identify any jobs she could perform?

(Tr. 36-37). The VE responded with three jobs: Ticket taker, DOT # 344.667-010, Parking Lot Attendant, DOT # 211.462-010, and Coupon Recycler, DOT # 290.472-010. (Tr. 37).

The DOT description for Ticket Taker includes "[c]ollects admission tickets and passes from patrons at entertainment events . . . [r]efuses admittance to patrons without a ticket or pass or who are undesirable for reasons such as intoxication or improper attire. May direct patrons to their seats. May distribute door checks to patrons temporarily leaving establishment." DOT # 344.667-010, 1991 WL 688 710. This description conflicts with the restriction to avoid ongoing contact with the general public and the VE provided no explanation for this inconsistency.

The DOT number the VE provided for Parking Lot Attendant is actually entitled Cashier II, but states within the description that the job may also be designated according to the nature of the establishment as Parking Lot. DOT # 211.462-010. The description for this job includes "[r]eceives cash from customers or employees in payment for goods or services . . . . Makes change, cashes checks and issues receipts or tickets to customers." This, too, conflicts with the restriction to avoid ongoing contact with the general public. At the hearing, the ALJ questioned the Parking Lot Attendant job:

>  Q. I just wondered if these are those who have a digital display of the amount, rather
>  than having to speak the amount.
>  A. Well, either if they have a digital amount, they have to speak very infrequently
>  to the customer.
>  Q. Okay. Very infrequently, and that's what you were considering?
>  A. Right.
>  Q. Would there be any reduction in the number of jobs, do you think?
>  A. I don't think so.

(Tr. 37-38).

Although the VE testified that a Parking Lot Attendant would only very infrequently have

-14-

to speak to a customer, the restriction is to avoid ongoing contact with the general public, which could not be avoided based upon the DOT description of this job.

Nevertheless, argues Defendant, Plaintiff does not suggest that she could not perform the work of a Coupon Recycler and that job alone exists in significant numbers sufficient to constitute substantial evidence. The VE testified that Coupon Recycler provides 15,900 jobs nationally and 270 jobs in South Carolina. (Tr. 37). However, as noted by Plaintiff, the DOT number provided by the VE for Coupon Recycler does not exist. Defendant points to DOT # 290.477-010, arguing that this is the correct number for Coupon Recycler and the VE simply made an error. DOT # 290.477-010 is entitled Coupon Redemption Clerk and provides no indication that the job may also be designated as Coupon Recycler. Thus, the court could only speculate that the Coupon Redemption Clerk was the job intended by the VE and that the numbers provided by the VE apply to the Coupon Redemption Clerk job. Because unresolved conflicts exist between the VE's testimony and the DOT with respect to two of the jobs identified and the nature of the third job identified is unclear, remand is appropriate for resolution of these issues.

## CONCLUSION

In conclusion, this Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Richardson, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d at 989. Despite Plaintiff's claims, substantial evidence exists to support the Commissioner's decision with respect to Plaintiff's chronic pain

syndrome, obesity and the Listings. However, the ALJ failed to elicit from the VE an explanation for the conflicts between her testimony and the DOT for two of the jobs identified. Further, the DOT number for the third job identified does not exist and it is unclear as to which job the VE was referring. Thus, this case is REMANDED to the Commissioner for further administrative action at step five for the purpose of resolving the identity of the jobs stated by the VE as well as the conflicts between the VE's testimony and the descriptions in the DOT as set forth above.

**IT IS SO ORDERED**.

       s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

February 27, 2014  
Florence, South Carolina